## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LYMAN S. HOPKINS,<br>     PLAINTIFF, | :<br>:<br>: CIVIL ACTION NO. 3:09cv1143(VLB)<br>: |
| v. | : JULY 15, 2011<br>: |
| BRIDGEPORT BOARD OF EDUCATION,<br>     DEFENDANT. | :<br>:<br>: |

## MEMORANDUM OF DECISION DENYING IN PART AND GRANTING IN PART DEFENDANT'S [DOC. #69] MOTION FOR SUMMARY JUDGMENT

Before the Court is a motion for summary judgment filed by the Defendant, Bridgeport Board of Education (the "Board"). The Plaintiff, Lyman S. Hopkins ("Hopkins"), proceeding *pro se*, brought this suit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") for employment discrimination and retaliation as well as a breach of contract claim in connection with a March 2008 Settlement Agreement (the "Settlement Agreement") executed by the parties with respect to charges Plaintiff filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). In particular, Plaintiff alleges that Defendant violated Title VII by refusing to provide employment references as required under the terms of the Settlement Agreement on the basis of race and gender discrimination. In addition, Plaintiff alleges that Defendant's refusal to provide employment references is an employment practice that caused a disparate impact on the basis of race and gender. For the reasons stated hereafter, Defendant's motion for summary judgment is granted as to Plaintiff's Title VII claims, but denied as to Plaintiff's breach of contract claim.

1

## Facts

The following facts relevant to Defendant's motion for summary judgment are undisputed unless otherwise noted. [Doc. #71]. In September 2005, Plaintiff, an African American male, received a one year contract for employment as a bilingual teacher with Defendant and taught first-year Spanish classes. On or about February 27, 2006, Plaintiff received notice from Defendant that his contract would not be renewed. Thereafter, Plaintiff filed a complaint against Defendant alleging race and sex discrimination with the CHRO and in particular Plaintiff alleged that he was discriminated against on the basis of his race, color, sex and national origin. [*Id.*].

On February 25, 2008, Plaintiff signed a withdrawal of the CHRO complaint and indicated that he had accepted a satisfactory offer from Defendant. The parties executed a settlement agreement dated March 3, 2008 ("Settlement Agreement") in which Defendant agreed to pay Plaintiff $3,000 and Plaintiff agreed to release all claims against Defendant. [*Id.*]. The parties further agreed that "any specific inquiries, oral or written, made by prospective employers will be directed to the Director of Bilingual Education Services and World Languages for a response. In response to such inquiries, the Director will provide information that is consistent with only the positive aspects of Hopkins' performance, including his dates of employment, salary, position, and such other matters as are set forth in the letter of recommendation attached hereto as Exhibit A." [Doc. #70, Ex. E, ¶2]. Plaintiff was also provided with the letter of recommendation as required under the Settlement Agreement signed by the

Director of Bilingual Education Services and World Languages, Yvette DeFeo for his use. [Doc. #70, Ex. F].

After his termination by the Board, but before the Settlement Agreement, Hopkins held and was terminated from another teaching position. Plaintiff subsequently applied for jobs with other school districts. Plaintiff asserts that in connection with several of his applications for employment, Defendant did not provide a reference letter containing information consistent with the positive aspects of Hopkins's employment with the Board in accordance with the terms of the Settlement Agreement and because of Defendant's discriminatory animus. [Doc. # 77]. Plaintiff also alleges that several school districts required the Defendant to submit applications including employment references electronically through an automated online system.

In a letter dated July 9, 2008, Plaintiff wrote to DeFeo, the then current Director of Bilingual Education Services and World Languages, notifying her that several school districts had requested employment references noting that some references could be mailed or faxed, while others required him to provide her email address to facilitate her electronic submission of a reference. Plaintiff requested that DeFeo provide him with an email address so that he could arrange for such electronic submission of a reference. [Doc.#1-6, Ex. 5]. Plaintiff asserts that DeFeo did not respond to his request for her email address. Plaintiff also asserts that DeFeo did not respond to Plaintiff's letter dated July 15, 2008, requesting that she complete the attached references forms for the "Seminole

County PS and Citrus Country SB" and mail or fax the completed forms to their offices. [*Id.*].

In a letter dated July 21, 2008, Plaintiff wrote to the Superintendent of Bridgeport Public Schools informing him that his employment reference requests were not being responded to or furnished by Defendant's employees. Plaintiff included within this letter copies of the emails and letters he had written in June and July of 2008 to DeFeo, two of Defendant's teachers, Hector Sanchez and Jorge Pezo, and Carole Pannozzo, the Director of the Bridgeport Board of Education Human Resources Department, requesting that they complete various employment references. [Doc. 1-12, Ex. 11]. Plaintiff further alleges that Pannozzo was present at the January 2008 CHRO mediation hearings and therefore presumably knew of the terms of the Settlement Agreement. [Doc. #1]. In particular, Plaintiff emailed Pannozzo on June 17, 2008 and again on June 28, 2008 regarding electronic employment reference requests and noted that he was contacting her as he did not have DeFeo's direct email address for him to provide to school districts that required electronic references. [Doc. 1-12, Ex. 11].

Plaintiff received three emails dated August 4, 2008, September 30, 3008, and October 28, 2008 respectively from the Human Resources Office of the St. Johns School District informing him that they had not received the references that had been requested from two of Defendant's teachers, Hector Sanchez and Jorge Pezo. [Doc.#1-7, Ex. 6].

Plaintiff also received two emails dated July 8, 2008 and January 27. 2009, respectively from the Citrus County School District informing him that his employment application was incomplete due to missing references from Defendant Bridgeport Board of Education.  [Doc.#1-8, Ex. 7].   In an email dated July 8, 2008, the Citrus County School district informed Plaintiff that "your application must be complete before consideration will be given."  [*Id.*].

On February 20, 2008, Plaintiff visited the Saint Lucie County Florida School Board offices to view his employment file and discovered that a reference form that was sent to Defendant's Human Resources Department on August 26, 2007 had never been completed.  [Doc. # 1].

Defendant disputes Plaintiff's account that it refused to provide employment references in breach of the Settlement Agreement, asserting that it satisfied its obligations under the Settlement Agreement by providing Plaintiff with a reference letter for his use and that Plaintiff did not provide this letter which he had within his possession to the school districts where he had outstanding reference requests.  [Doc. # 71].  The Plaintiff admitted in his deposition that he did not submit the reference letter with his employment applications.  In addition, Defendant asserts that Plaintiff did not comply with the terms Settlement Agreement by directing employment reference inquiries to individuals who were not the Director of Bilingual Education Services and World Languages as required under the Settlement Agreement. [*Id.*].

Plaintiff also sets forth statistical evidence attesting to the fact that females and non-minorities far outnumber males and minorities in foreign language teaching positions in Connecticut Public Schools and that he was one of a few African American males who held a foreign language teaching position in Connecticut.  [Doc. #1-3, Ex. 2 and Doc. #1-4, Ex. 3].

<u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

<u>Analysis of Employment Discrimination Claim</u>

Plaintiff alleges that Defendant discriminated against him on the basis of his race and gender by refusing to provide employment references in accordance

with the terms of the Settlement Agreement. Under Title VII, Plaintiff's claims of discriminatory treatment are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* standard requires that Plaintiff establish a *prima facie* case of discrimination by showing that (1) he is part of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action and (4) that the circumstances surrounding the employment action give rise to an inference of discrimination. *Id.* The Second Circuit has noted that the burden to establish a prim facie case is "minimal" or "de minimis." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

If Plaintiff can establish a *prima facie* case, the burden shifts to the Defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell*, 411 U.S. at 802. As this stage, Defendants need only proffer, not prove, the existence of a nondiscriminatory reason for their employment decision. *See Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "This burden is one of production, not persuasion, it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (internal quotations omitted).

If Defendant meets its burden of production, the burden shifts back to Plaintiff to show that the legitimate, nondiscriminatory reason offered by the Defendant is mere pretext for illegal employment discrimination. *McDonnell*, 411 U.S. at 804. "Although the intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Under the *McDonnell Douglass* standard, Plaintiff has failed to establish a *prima facie* case of employment discrimination. While it appears there is no dispute that Plaintiff has established the first two elements, Plaintiff cannot establish that he suffered an adverse employment action as the conduct Plaintiff complains of occurred after Plaintiff was no longer employed by Defendant. The Second Circuit has held that for conduct to constitute an adverse employment action, it must be a "materially adverse change in the terms and conditions of employment." *Galabaya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

The Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-62, 66 (2006) concluded that "Title VII's substantive provision and its antiretaliation provision are not coterminous" and that only the anti-retaliation provision extended to post-employment conduct. The language of the substantive provision of Title VII in Section 703(a) sets forth that it shall be an unlawful employment practice for any employer to "(1) *to fail or refuse to hire or to discharge* any individual, or otherwise to discriminate against any individual *with respect to his compensation, terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way *which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely effect his status as an employee*, because of

such individual's race, color, religion, sex, or national origin." *Id.* at 61-62. The Supreme Court in construing this language concluded that the "italicized words in the substantive provision – 'hire,' 'discharge,' 'compensation, terms, conditions or privileges of employment,' 'employment opportunities,' and 'status of employee' – explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." *Id.* at 62. Accordingly, since the purported discriminatory conduct took place after Plaintiff was no longer Defendant's employee such conduct could not have affected Plaintiff's employment or altered the conditions of the workplace.

Lastly, the Court finds the facts and holding of *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334 (S.D.N.Y. 2009) particularly relevant to the present case. In that case, the plaintiff, an attorney, brought claims against her former employer Clifford Chance US, LLP ("Clifford Chance") for employment discrimination under Title VII and for breach of contract. The plaintiff made complaints to Clifford Chance's management of perceived discriminatory practices. The parties then agreed to settle the matter and plaintiff resigned. Under the terms of the settlement agreement, Clifford Chance agreed to provide plaintiff with a letter of recommendation. Plaintiff alleged that she repeatedly requested that Clifford Chance provide the letter, but no letter came until almost a year after the settlement agreement had been executed. Plaintiff then rejected the letter that was proffered as woefully inadequate. Plaintiff contended that Clifford Chance's refusal to provide the recommendation letter breached the settlement agreement and constituted unlawful discrimination under Title VII. The Court

held that Plaintiff was not able to establish an employment discrimination claim under the substantive provision of Title VII as there was no adverse employment action since the allegations against Clifford Change occurred after Plaintiff had resigned pursuant to the settlement agreement. *Id.* at 341-342. Likewise here, Hopkins's allegations against Defendant Bridgeport Board of Education all occurred after Hopkins's employment ended when his one-year contract expired and wasn't renewed.

<u>Analysis of Retaliation Claim</u>

Defendant argues that Plaintiff did not properly plead a retaliation claim in his complaint and accordingly cannot raise new claims for the first time in submission in opposition to summary judgment. However, as Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's complaint and submissions. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training") (internal quotation marks and citation omitted); *see also Belpasso v. Port Authority of New York and New Jersey*, 400 F' App'x 600, 601 (2d Cir. 2010) ("Where the party opposing summary judgment is proceeding *pro se*, we must read the party's pleading liberally and interpret them to raise the strongest arguments that they suggest. A *pro se* plaintiff, however, cannot defeat summary judgment by simply relying on the allegations of his complaint; he must present

admissible evidence from which a reasonable jury could find in his favor.") (internal quotation marks and citation omitted). In interpreting Plaintiff's complaint liberally, the Court construes Plaintiff's pleadings to encompass a retaliation claim. For example, Plaintiff explicitly stated that he is seeking monetary damages for "retaliation" in his complaint. [Doc. #1, p. 5]. In addition, Plaintiff's claims are premised on Defendant's conduct after Plaintiff filed and then settled a complaint with the CHRO which suggests that Plaintiff's claims are premised on a theory of retaliation. Therefore, Plaintiff's complaint can certainly be construed to have encompassed a retaliation claim.

To establish a *prima facie* claim for retaliation, the plaintiff must show that (1) he engaged in a protected activity; (2) his employer is aware of the activity; (3) the employer took some adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action that a retaliatory motive played a party in the adverse employment action. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Retaliation claims are also analyzed using the burden-shifting framework set forth in *McDonnell Douglas*.

Here this is no dispute that Plaintiff engaged in a protected activity when he filed a complaint with the CHRO and that Defendant was aware of that activity. In addition, it is likely that Defendant's failure to provide employment references is sufficient to establish that Defendant took some adverse action against Plaintiff. As noted above, the Supreme Court in *Burlington* broadened the spectrum of conduct that can qualify as an adverse employment action to include post-employment conduct. Therefore, an adverse employment action in the

retaliation context need only be harmful to the point that they are likely to dissuade a reasonable employee from making or support a charge of discrimination. *Burlington*, 548 U.S. at 57. In addition, there is caselaw in this circuit that supports a finding that the failure to provide employment references constitutes an adverse employment action in the retaliation context. *Memnon*, 667 F. Supp. 2d at 342-344; *Pantchenko v. C.B. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (refusal to provide employment references in retaliation for filing complaint with EEOC could amount to a violation of Title VII).

However with respect to fourth prong regarding causation, the only evidence presented in the record to support a finding of causation is the temporal proximity between Hopkins's protected activity and Defendant's failure to provide the requested references. When temporal proximity alone is used to show causation, the proximity must be "very close" in order to support a *prima facie* case of retaliation*. Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (20 month period suggested, "by itself, no causality at all"); *see also Walder v. White Plaints Bd. of Educ.*, 738 F. Supp. 2d 483, 503 (S.D.N.Y. 2010) ("most of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation"); *Ghaly v. U.S. Dept. of Agric.*, 739 F. Supp. 2d 185, 200 (E.D.N.Y. 2010) (nine month period between protected conduct and retaliation did not support causation); *Ragin v. E. Ramapo Cent. School Dist.*, No. 05 Civ. 6496, 2010 WL 1326779 at *24 (S.D.N.Y. Mar. 31, 2010) (five month period did not support causation); *but see Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 230 (E.D.N.Y.

2010) (failure to promote retaliation claim occurring just over three months after protected conduct did demonstrate causation where that was the first opportunity for accused to take retaliatory action).

Here Hopkins entered into the Settlement Agreement on March 3, 2008 and Hopkins's earliest request for an employment reference was sent June 11, 2008. [Doc. 1-13, Ex. 12]. Therefore, there was a period of approximately three months between the protected activity and the first opportunity for Defendant to take retaliatory action. When viewing the evidence in the light most favorable to the Plaintiff and considering that within the education context hiring cycles are typically done on an annual basis, the Court finds that a three month period could allow for an inference of causation to satisfy the fourth prong of Plaintiff's *prima facie* case.

However, Defendant has proffered two legitimate non-discriminatory reasons for not providing the requested references. First, Defendant contends that it did not provide the additional requested employment references since Defendant had already provided Hopkins with a letter of recommendation for his use. Second, Defendant asserts that Hopkins requested references from individuals who were not the Director of Bilingual Education Services and World Languages as was required by the terms of the Settlement Agreement. Under the *McDonnell* burden-shifting framework, Defendants have arguably satisfied their burden simply by articulating a legitimate purpose and therefore the burden now shifts back to Plaintiff to show that these proffered reasons are merely a pretext for retaliation. There is evidence in the record that Defendant's proffered reasons

were pretextual.  First, the Settlement Agreement obligated the Defendant to not only provide the Plaintiff a reference letter, but also to provide additional information consistent with the positive aspects of his employment as required by the prospective employer.  The Defendant posits no reason for failing to respond to prospective employers' requirements for electronic submission of reference material.  Further, the Defendant agreed to refer all inquiries to Ms. DeFeo.  While Plaintiff solicited references from others, these requests were not referred to Ms. Defeo as agreed upon when directed to Pannazzo who should have known to refer the request to DeFeo.  The temporal proximity of the Defendant's repeated omissions coupled with the lack of a legitimate non-pretextual reason for the omissions are sufficient to satisfy Plaintiff's burden to rebut Defendant's proffered reasons.

Contrastingly, in the *Memnon* case the court concluded that the plaintiff could not demonstrate that Clifford Chance's proffered reasons for not providing the letter of recommendation was pretextual where a reference letter was not provided as agreed in settlement of a discrimination claim because the form and content of the letter had not been agreed to prior to the execution of the settlement agreement.  Here the content of the additional information to be provided by the Defendant had been agreed.  Clifford Chance also contended that James Paul, who was to provide the letter to Memnon and who had not previously worked with her and was not familiar with her work, believed that Memnon would obtain the letter from a partner with whom she had worked while employed. *Memnon*, 667 F. Supp. 2d at 344.  Here, the parties made clear who was

responsible for providing additional information to Hopkins's prospective employers. Unlike, the court in *Memnon* where the plaintiff relied on temporal proximity alone to meet her burden and after "scouring the record" the court found no other evidence of pretext, there is patent evidence of pretext in the record in this case. Accordingly Defendant's motion for summary judgment on Plaintiff's retaliation claim under Title VII is denied.

Analysis of Disparate Impact Claim

Plaintiff also alleges that Defendant's practice of refusing to provide employment references was a policy or practice that caused a disparate impact on the basis of race and gender. The Court notes that while Plaintiff does not explicitly plead a cause of action for disparate impact in his complaint, he does allege that he is of "acute representation" and attaches a statistical report that notes that females and non-minorities far outnumber males and minorities in foreign language teaching positions in Connecticut Public Schools. [Doc. #1-3, Ex. 2 and Doc. #1-4, Ex. 3]. Accordingly, the Court liberally construes Plaintiff's complaint to encompass a disparate impact cause of action. Plaintiff further clarifies his theory of disparate impact in his opposition to Defendant's motion for summary judgment arguing that "Plaintiff employment references is [Bridgeport Board of Education] policy or custom toward Plaintiff demographic makeup which is inconsistent with the vast majority of state foreign language educators." [Doc. #77].

To establish *a prima facie* case of disparate impact, Plaintiff must show that a facially neutral employment policy or practice has a significant disparate impact. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (*citing Griggs v. Duke Power Co.*, 401 U.S. 324, 430-32 (1971)). Here, Plaintiff has not alleged a facially neutral employment policy or practice. Instead, he is alleging that Defendant refuses to provide employment references to African American males. Moreover, Plaintiff has provided no evidence that the refusal to provide employment references was a general practice or policy of Defendant. *Reid v. Zackenbaum*, No. 05-cv-1569, 2005 WL 1993394, at *3 (E.D.N.Y. Aug. 17, 2005) (concluding that plaintiff's complaint does not allege nor was there any indication in the complaint that the challenged employment practice produced a disproportionate impact but "rather, at most [Plaintiff] alleges that it produced an adverse impact on him"); *see also Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 277 (S.D.N.Y. 2001) ("It is difficult to see how one alleged instance of defendant's failure to post a job – a job which the [plaintiff] was aware of, and interviewed for – is sufficient to plead an actionable employment practice or policy which limits the job opportunities of historically disfavored groups"). At most, Plaintiff has alleged and provided evidence that the challenged employment action only had an adverse impact on him. Therefore Plaintiff has failed to demonstrate a *prima facie* case of disparate impact.

Assuming arguendo that there was a facially neutral policy or practice of refusing to provide employment references, Plaintiff must "establish that the challenged employment practice caused the statistical disparity." *E.E.O.C. v.*

***Joint Apprenticeship Comm. of Joint Industry Bd. of Elec. Indus.***, 895 F.2d 86, 90 (2d Cir. 1990). Plaintiff has submitted a National Study on Secondary to Postsecondary Foreign Language Articulation by the University of Connecticut and a study from the National Center of Education Statistics in support of his disparate impact claim. [Doc.#1-3, Ex. 2, Doc. #1-4, Ex. 3]. Both studies note that there are few minority or male foreign language teachers in Connecticut. [*Id.*]. However, it is well established that "a Title VII plaintiff does not make out a case of disparate impact simply by showing that at the bottom line, there is racial imbalance in the work force. As a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack. ***N.A.A.C.P. v. Town of East Haven***, 998 F. Supp. 176, 184 (D. Conn. 1998) (internal quotation marks and citations omitted).

Here Plaintiff has only demonstrated that at the bottom line there is a racial imbalance in the workforce which could be the result of any number of factors. Plaintiff has failed to provide evidence that links this bottom line imbalance to Defendant's purported practice or policy of refusing to provide employment references. ***Brown***, 163 F.3d at 712 (noting that the casual connection requirement "recognizes that underrepresentation of blacks might result from any number of factors, and it places an initial burden on the plaintiff to show that the specified factor challenged under the disparate impact model results in the discriminatory impact … [Plaintiff] does not connect [] general statistics to any [Defendant] policy"). Plaintiff's sole reliance on general statistics which reflect a bottom line racial imbalance is insufficient to establish a case of disparate impact

and the Court therefore grants summary judgment on Plaintiff's disparate impact claim.

<u>Analysis of Breach of Contract Claim</u>

Plaintiff alleges that Defendant breached the Settlement Agreement when it did not respond to the Plaintiff's repeated requests for Defendant to provide additional employment references. Defendant argues there was no breach as Defendant provided Plaintiff with a letter of recommendation that Plaintiff admitted he did not submit to the various school districts where he had outstanding requests for employment references. In addition, Defendant argues there was no breach as Plaintiff's requests for employment references were not in accordance with the terms of the Settlement Agreement as Plaintiff himself requested references from individuals who were not the Director of Bilingual Education Services and World Languages.

Under Connecticut law, the elements of a breach of contract action are (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. *Empower Health LLC v. Providence Health Solutions LLC*, No. 3:10-cv-1163, 2011 WL 2194071, at *4 (D. Conn. June 3, 2011) (citation omitted). "It is a fundamental principle of contract law that the existence and terms of a contract are to be determined from the intent of the parties. The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were." *Auto Glass Express, Inc. v. Hanover Ins. Co.*, 293

Conn. 218, 225 (2009). "[T]he interpretation and construction of a written contract present only questions of law, within the province of the court ... so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face." *Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495 (2000) (*quoting* 11 S. Williston, *Contracts* § 30.6 (4th ed. 1999)). "Contract language is unambiguous when it has a definite and precise meaning ... concerning which there is no reasonable basis for a difference of opinion." *Levine v. Advest, Inc.*, 244 Conn. 732, 746 (1998) (internal citations and quotations omitted).

The Settlement Agreement provides in relevant part that:

[A]ny specific inquiries, oral or written, made by prospective employers will be directed to the Director of Bilingual Education Services and World Languages for a response. In response to such inquiries, the Director will provide information that is consistent with only the positive aspects of Hopkins' performance, including his dates of employment, salary, position, and such other matters as are set forth in the letter of recommendation attached hereto as Exhibit A. [Doc. #70, Ex. E, ¶2].

By the express terms of the Settlement Agreement, Defendant was obligated to respond to inquiries made by prospective employers. Here, the Plaintiff made inquiries directly, but at the behest of prospective employers. Therefore, Plaintiff's own requests for Defendant to complete additional references were contemplated by the express terms of the Agreement.

Accordingly, the Court finds that it appears from the record that DeFeo's failure to respond to Plaintiff's July 15, 2008 letter addressed to her requesting that she complete the attached reference forms by providing additional information consistent with the positive aspects of Hopkins's performance as provided in the Settlement Agreement for the Seminole County PS and Citrus Country SB was a breach of contract. [Doc.#1-6, Ex. 5].

Requests for Defendant's teachers Sanchez and Pezo to complete employment references on behalf of Plaintiff however are not contemplated by the express terms of the contract. The Settlement Agreement unambiguously provides that "any specific inquiries, oral or written, made by prospective employers will be directed to the Director of Bilingual Education Services and World Languages for a response" and therefore Defendant's failure to respond to the employment requests that were directed to Sanchez and Pezo did not constitute a breach of contract as the record does not support an inference that they knew to refer the requests to DeFeo.

Plaintiff's requests to Pannazzo and DeFeo to provide Plaintiff with an email address to facilitate the online submission of employment references could possibly be seen as a breach of contract. Plaintiff can be seen to be essentially conveying the employer's request for an electronic submission when he requested DeFeo's email address. It appears that Plaintiff needed to provide DeFeo's email address to certain prospective employer's automated online application systems which then would trigger that employer sending a request directly to DeFeo for an electronic employment reference. The Court finds that

such email requests for an electronic employment reference would likely constitute "any specific inquiries oral or written, made by prospective employers" and would be accordingly covered under the terms of the Settlement Agreement. The Court also finds that Pannazzo as head of Defendant's Human Resources Department had the obligation to direct requests made by prospective employers to DeFeo under the terms of the Settlement Agreement. Therefore, the Court finds there is a genuine issue of material fact regarding whether Defendant failed to comply with its obligations under the Settlement Agreement when it failed to provide Plaintiff with DeFeo's email address.

In addition, Plaintiff alleges that Defendant failed to respond to both the Citrus County School District and the Saint Lucie Country School District requests for employment references sent to Defendant's Department of Human Resources. [Doc. #1 and Doc. #1-8, Ex. 7]. It is unclear from the evidence in the record whether Plaintiff sent the employment requests directly himself to Human Resources or if the School Districts themselves sent them and therefore the Court finds there is a genuine issue of material fact in dispute with regard to whether Defendant breached the Settlement Agreement by not responding to these two school districts.

Lastly, Defendants argue that Plaintiff has failed to allege a nexus between the alleged breach and Plaintiff's alleged damages. *West Haven Sound Dev. Corp. v. City of West Haven,* 207 Conn. 308, 314-15 (1988) ("It is hornbook law that to be entitled to damages in contract a plaintiff must establish a causal relation between the breach and the damages flowing from that breach."). However,

Plaintiff has provided evidence suggesting that his damages were directly and proximately caused at least with respect to one potential instance of Defendant's breach of contract. In connection with Defendant's employment application with the Citrus County School District, Plaintiff has provided evidence that his application for employment was not considered as a result of his incomplete application. [Doc.#1-8, Ex. 7]. Accordingly, the Court finds there is a genuine issue of material fact regarding whether Defendant's breach directly caused Plaintiff damages. For the foregoing reasons, the Court denies Defendant's motion for summary judgment on Plaintiff's breach of contract claim.

## Conclusion

Based upon the above reasoning, the Defendant's [Doc. #69] motion for summary judgment is DENIED IN PART and GRANTED IN PART. Plaintiff's breach of contract and retaliation claims remain extant. The rest of Plaintiff's claims are hereby dismissed.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge

**Dated at Hartford, Connecticut: July 15, 2011**